**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TEDDRICK BAILEY,**<br>**Individually and on behalf of all others similarly situated**<br><br>***Plaintiff,***<br><br>**v.**<br><br>**UNIVERSAL CABLE HOLDINGS, INC. d/b/a SUDDENLINK COMMUNICATIONS**<br><br>***Defendant.*** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Action No. 2:20-CV-00034-JRG-RSP**<br><br>**JURY TRIAL DEMANDED**<br><br>**COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)**<br><br>**CLASS ACTION PURSUANT TO FED. R. CIV. P. 23(b)(3)** |

**PLAINTIFF'S OPPOSED MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE TO THE PUTATIVE CLASS MEMBERS**

**TO THE HONORABLE ROY S. PAYNE:**

Plaintiff Teddrick Bailey, individually and on behalf all opt-in plaintiffs and others similarly situated ("Plaintiff and the Putative Class Members") files this Opposed Motion for Conditional Certification and Notice to the Putative Class Members, and will respectfully show the following[1]:

## I. INTRODUCTION

The Fair Labor Standards Act ("FLSA") permits an employee to bring an action to recover wages owed to "himself . . . and other employees similarly situated." 29 U.S.C. § 216(b). Plaintiff seeks

[1] Plaintiff has also alleged claims arising under the state law(s) of Texas, which qualify as a Federal Rule of Civil Procedure 23 class action. Plaintiff moves only for conditional certification under FLSA section 216(b), and not Rule 23 class certification, at this time.

conditional certification of a collective action consisting of: **"All[2] Hourly Call-Center Employees[3] Who Worked For Universal Cable Holdings, Inc. d/b/a Suddenlink Communications, Anywhere In The United States, At Any Time In The Past Three Years Through The Final Disposition of This Matter"** ("Putative Class Members").

The Putative Class Members that Plaintiff Bailey seeks to represent performed similar (if not identical) job duties, were all subject to the same company-wide policy, and suffered a common injury. Plaintiff Bailey has met the lenient standard for conditional certification, and he respectfully requests that this Court conditionally certify this case as a collective action and authorize notice to be sent to the Putative Class Members. Notice at this stage is critical so that these workers can make an informed decision about whether to join this suit and stop the statute of limitations from running on their claims for unpaid wages.[4]

---

[2] To the extent Suddenlink may argue Putative Class Members have signed arbitration agreements and are ineligible to receive notice, Plaintiff disputes the validity of the arbitration agreements. Suddenlink has not produced the evidence to prove to this Court that each potential member (let alone each current opt-in) has a valid and binding arbitration agreement. *In re JPMorgan Chase & Co.*, 916 F.3d 494, 500 (5th Cir. 2019) ("[A]n employer that seeks to avoid a collective action, as to a particular employee, has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for that employee."). Moreover, "[i]f an employer cannot meet its burden, the employee would receive notice of the lawsuit. *Tuggle v. Rockwater Energy Solutions, Inc.* No. CV H-18-4746, 2019 WL 7040330, at *4 (S.D. Tex. Dec. 3, 2019), *report and recommendation adopted*, No. CV H-18-4746, 2019 WL 6971660 (S.D. Tex. Dec. 19, 2019).

[3] Hourly Call-Center Employees means all hourly employees whose primary job requires them to interact with customers or clients over the phone or through an internet chat program.

[4] Unlike Rule 23 class actions in which the statute of limitations is tolled for all potential class members with the filing of the complaint, the statute of limitations under the FLSA is not tolled with the commencement of the action or even with an order granting conditional certification. *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 995–96 (E.D. Tex. 2011). Rather, the statute of limitations continues to run on each individual's claim until they file their written consent to join the action with the court. *Id.* Although the notice process does not stop the statute of limitations, it does, at a minimum, notify the putative collective class members of the case, and that the statute of limitations is running on their claims.

## II. STATEMENT OF FACTS

Universal Cable Holdings, Inc. d/b/a Suddenlink Communications ("Defendant" or "Suddenlink") is a provider of internet, cable, and phone services throughout the United States. On February 12, 2020, Plaintiff Bailey commenced this collective/class action against Suddenlink, alleging the company failed to pay its Hourly Call-Center Employees for all hours worked, including the correct amount of overtime compensation for all hours worked over forty each week. *See* ECF No. 1.

Plaintiff and the Putative Class Members performed similar work, held similar positions, had similar job requirements, were compensated in a similar manner, and suffered a common injury due to Suddenlink's unpaid start-up policy.[5] Plaintiff and the Putative Class Members all performed similar work – that is, they communicated and assisted Suddenlink's clients and customers over either the phone or via internet chat/messaging services. *See* Exs. 1–10, at ¶ 5. Plaintiff and the Putative Class Members all went through training and orientation type classes, were all taught Suddenlink's common policies and procedures, worked similar schedules, and all followed the same Suddenlink policies and procedures. *See* Exs. 1–10, at ¶¶ 4, 6–8. Plaintiff and the Putative Class Members were also all paid by the hour. *See* Exs. 1–10, at ¶ 14.

Whether an Hourly Call-Center Employee is handling customer/client calls over the phone or by internet chat service, they are all taught and required to come into work early so they may prep their computer, required software programs, and read their emails before they clock in at their "official" shift start time. This policy is taught in training. *See* Exs. 1–10, at ¶ 6. It is enforced by Suddenlink's managers. *See* Exs. 1–10, at ¶¶ 7, 11. Further, time alteration requests claiming this initial

---

[5] *See generally* Declaration ("Decl.") of Eric Lusk (attached as Exhibit 1 to this Motion); Decl. of Matthew Norris (Ex. 2); Decl. of Shalon Parris (Ex. 3); Decl. of Melissa Porter (Ex. 4); Decl. of Wade Schlueter (Ex. 5); Decl. of Constance Williams (Ex. 6); Decl. of Teddrick Bailey (Ex. 7); Decl. of Cynthia Burgos (Ex. 8); Decl. of Ashley Mays (Ex. 9); Decl. of Marco Flores (Ex. 10).

start-up time are denied as non-compensable work hours. *See* Exs. 1–10, at ¶ 9. All Hourly Call-Center Employees suffer from the same Suddenlink policy.[6]

## III. ARGUMENT AND AUTHORITY

### A. LEGAL STANDARD FOR SECTION 216(b) NOTICE TO PUTATIVE CLASS MEMBERS

The FLSA's "collective action" provision allows one or more employees to bring an action for overtime compensation on "behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under Section 216(b), an employee need only show that he is suing his employer for himself and on behalf of other employees "similarly situated." *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–16 (5th Cir. 1995) (overruled on other grounds by *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 123 S. Ct. 2148, 156 L.Ed.2d 84 (2003)); *Grayson v. K-Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996), *cert. denied*, 117 S. Ct. 435 (1996). Indeed, plaintiff's claims need not be identical to the potential opt-ins, they need only be similar. *See Grayson*, 79 F.3d at 1096 (emphasis added); *Tice*, 826 F. Supp. 2d, at 995–96 ("The court need not find uniformity in each and every aspect of employment to determine a class of employees are similarly situated under § 216(b)."). Indeed, plaintiff needs only to demonstrate "a reasonable basis" for the allegation that a class of similarly situated persons may exist. *See Vaughn v. Document Grp. Inc.*, 250 F. Supp. 3d 236, 239 (S.D. Tex. 2017); *Cruz v. ConocoPhillips*, 208 F. Supp. 3d 811, 816 (S.D. Tex. 2016).

### B. COURTS IN THE FIFTH CIRCUIT USE THE TWO-STAGE *LUSARDI* APPROACH FOR DECIDING IF PLAINTIFFS ARE SIMILARLY SITUATED

Courts throughout the Fifth Circuit, including this one, uniformly apply the two-step approach to determine whether plaintiffs are "similarly situated" to the potential plaintiffs. *See Mooney*, 54 F.3d

---

[6] The thirty (30) plaintiffs currently opted into this matter all suffered from the same Suddenlink pre-shift policy, and they represent a diverse group of employees who worked at five (5) different Suddenlink locations. Plaintiffs worked for Suddenlink in Tyler, TX; Lubbock, TX; Houston, TX; Universal City, TX; and Lake Havasu, AZ. The current plaintiffs' job titles included: Technical Support Representative, Customer Service Representative, Billing Support Representative, Retention Specialist, Sales Agent, ROC Support Representative, and ICare Chat Agent.

at 12313–16; *Ramirez v. Load Trail, LLC*, 333 F.R.D. 89, 93 (E.D. Tex. 2019); *Goss v. Tyler Traditions, Inc.,* No. 6:18-CV-423-JDK, 2019 WL 4935290, at *2 (E.D. Tex. July 22, 2019); *Wright v. O-Tex Pumping, LLC*, No. 2:15-CV-1895-JRG, 2016 WL 7634533, at *2 (E.D. Tex. June 6, 2016). Under the well-established *Lusardi* approach, the Court "determines whether the putative class members' claims are sufficiently similar" to authorize notice to potential class members. *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 519 (5th Cir. 2000) (citing *Mooney*, 54 F.3d 1213–14); *see also Miranda v. Mahard Egg Farm, Inc.*, No. 4:15-cv-406, 2016 WL 1704861, at *1 (E.D. Tex. Apr. 28, 2016). At the "notice stage"

> [T]he court makes a decision, usually based solely on the pleadings and any affidavits that have been submitted, whether to certify the class conditionally and give notice to potential class members. *See Mooney*, 54 F.3d at 1213–14. The decision is made using a "fairly lenient standard" because the court often has minimal evidence at this stage of the litigation. *Id.* at 1214. Courts, in fact, "appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Id.* & n. 8 (quoting *Sperling v. Hoffmann–La Roche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)). Thus, notice stage analysis typically results in conditional certification of a representative class. *Id.*

*Mahard Egg Farm*, 2016 WL 1704861, at *1. If the Court conditionally certifies the class, the "putative class members are given notice and the opportunity to 'opt-in,'" and "the action proceeds as a representative action." *Id.* (*citing Sedtal v. Genuine Parts Co.*, No. 1:08-cv- 413, 2009 WL 2216593, at *3 (E.D. Tex. July 23, 2009)).

It is not until the second stage, ***<u>after discovery is largely complete</u>***, that a defendant may move to decertify the conditionally certified class. *Sedtal*, 2009 WL 2216593 at 3 (emphasis added). This is because, "[a]t this stage, the court has much more information on which to base its decision and makes a factual determination on the similarly situated question." *Id.* "The scrutiny applied in the second stage is much more rigorous than that of the notice stage." *Vasallo v. Goodman Networks, Inc.*, No. 4:15-cv-97, 2015 WL 3793208, at *3 (E.D. Tex. June 17, 2015) (Clark, J.) (quoting *Mooney*, 54 F.3d at 1214). If the court finds the claimants are no longer made up of similarly situated persons, it

decertifies the class and dismisses the opt-in plaintiffs without prejudice. *Id.* If the class is still similarly situated, the court allows the collective action to proceed. *Id.*

### C. Notice Is Appropriate on the Facts Presented Because Plaintiff and the Putative Class Members Are Similarly Situated

At the lenient "notice" stage, courts determine whether the plaintiff and potential opt-ins are "similarly situated" based upon allegations in a complaint supported by affidavits (and nothing more). *See Tice*, 826 F. Supp. 2d at 994 (citing *Mooney*, 54 F.3d at 1213-14); *Miranda*, 2016 WL 1704861, at *1; *Kaiser v. Revival Home Healthcare Servs., Inc.,* No. 4:18-CV-00341, 2019 WL 2386228, at *5 (E.D. Tex. Mar. 12, 2019), report and recommendation adopted, No. 4:18-CV-00341, 2019 WL 1760076 (E.D. Tex. Apr. 22, 2019) ("The Court notes the standard at this first stage is lenient and typically results in conditional certification"). To be similarly situated, each class member's situation need not be identical, but merely similar. *See Miranda*, 2016 WL 1704861*,* at *2; *De La Rosa v. J&GK Properties, LLC*, No. 4:19-CV-00126, 2019 WL 7067130, at *2 (E.D. Tex. Dec. 23, 2019); *Tice*, 826 F. Supp. 2d at 955–96 ("the relevant inquiry is whether the potential class members performed the same basic tasks and were subject to the same pay practices").

Although no specific definition of "similarly situated" exists, this Court has recognized that "'[t]he key consideration in determining whether the plaintiffs have satisfied this standard is that they must show there to be substantial allegations that potential members were together the victims of a single decision, policy, or plan.'" *See Kelly v. Healthcare Servs. Grp., Inc.*, No. 2:13-CV-00441-JRG, 2013 WL 5665468, at *2 (E.D. Tex. Oct. 17, 2013) (*quoting Richardson v. Wells Fargo Bank, N.A.,* No. 4:11–cv–00738, 2012 WL 334038, at *2 (S.D. Tex. Feb. 2, 2012); *O-Tex Pumping*, 2016 WL 7634533, at *2. Courts should consider whether there is evidence that the putative class members have similar factual employment settings, such as their job requirements and pay positions. *See Kelly*, 2013 WL 5665468, at *2; *O-Tex Pumping*, 2016 WL 7634533, at *2; *Tice*, 826 F. Supp. 2d at 955. "The fundamental inquiry is whether the plaintiffs show 'some identifiable facts or legal nexus that bind the claims so that hearing

the cases together promotes judicial efficiency.'" *Kelly*, 2013 WL 5665468, at *2 (quoting *McKnight v. D. Hous., Inc.,* 756 F. Supp. 2d 794, 801 (S.D.Tex.2010)); *see also Ramirez*, 333 F.R.D. at 92 (conditionally certifying a diverse class of welders, painters, parts distributors, machine operators, and others who were paid in different ways, but who all alleged the same off-the-clock work policy).

In this matter, Plaintiff Bailey has presented substantial evidence, in the form of ten (10) declarations from five different Suddenlink call centers across the United States, that Plaintiff and the Putative Class Members were (and continue to be) victims of a policy that requires them to perform pre-shift prep work off-the-clock (and without pay) on a daily basis. *See Allen v. McWane, Inc.*, No. CIV.A.2:06-CV-158-TJ, 2006 WL 3246531, at *3 (E.D. Tex. Nov. 7, 2006) (certifying a nationwide class where plaintiffs presented declarations from six (6) of defendant's thirteen (13) facilities alleging the same off-the-clock work). Plaintiff and Putative Class Members are not allowed to clock in prior to their shift start time. *See* Exs. 1–10, at ¶ 10. Plaintiff and the Putative Class Members could even be (and often were) punished for clocking in before their shift start time. *See* Ex. 1, at ¶ 10 ("My manager, Don, told me I cannot clock in before my shift start time"); Ex. 6, at ¶ 10 ("I witnessed a coworker being fired because he continued to clock in before his shift start time"); Ex. 7, at ¶ 10 ("I witnessed several coworkers receive write ups because they clocked in before their shift start time").

Plaintiff and the Putative Class Members must also be "call ready" by their shift start time or they are subject to discipline. *See* Exs. 1–10, at ¶ 7. Thus, in order to comply with Suddenlink's policies, Plaintiff and the Putative Class Members must perform their pre-shift work off-the-clock and without pay. This illegal off-the-clock pre-shift work policy is taught to Plaintiff and Putative Class Members during training and rigorously enforced by Suddenlink's managers. *See* Ex. 1, at ¶ 7 ("[M]y manager Don Gracio even deducted points from me because I went Call Ready just two minutes after my shift started, he told me I needed to go Call Ready right at shift start or I am tardy"); Ex. 3, at ¶ 7 ("I was written up multiple times for not being Call Ready right at shift start"); Ex. 4, at ¶ 7 ("[M]y manager

also gave me a verbal warning because I went Call Ready just a few minutes after my shift start time"); Ex. 5, at ¶ 7 ("Even if we went in early but were not able to go Call Ready until after our shift start time, purely due to technical problems like computer crashes, we could still be considered tardy and lose points"); Ex. 6, at ¶ 7 ("[M]y manager Jordan Julino deducted two (2) points from me and wrote me up because I was not Call Ready at shift start. I had in fact arrived several minutes before my shift started by my computer crashed and I had to find a new computer, sign in and get Call Ready … My coach told me that I needed to arrive even earlier than I had already to ensure I had enough time to get Call Ready prior to my shift start time"); Ex. 8, at ¶ 7 ("My trainers and managers made it clear to me and my coworkers that we needed to arrive early so that we could have enough time to get Call Ready before shift start. They instructed us to not clock in until we were ready to take calls right at shift start"); Ex. 9, at ¶ 7 ("Ashely [my trainer] told me my pay starts at the beginning of my shift and that our pay does not start until we are Call Ready"). Becoming "Call Ready" requires Plaintiff and the Putative Class Members to perform substantial prep work, without which they would be unable to perform their jobs. *See* Exs. 1–10, at ¶ 8. Because Plaintiff and the Putative Class Members must be call ready by shift start and because they cannot clock in before their shift start time, Plaintiff and every Putative Class Members must perform the necessary prep work off-the-clock and without pay.

Moreover, Plaintiff and the Putative Class Members are similarly situated in terms of their factual employment settings. Plaintiff and the Putative Class Members were all paid by the hour. *See* Exs. 1–10, at ¶ 14. Plaintiff and the Putative Class Members performed the same general type of work—specifically, they helped customers or clients via phone calls or through internet-based chat services. *See* Exs. 1–10, at ¶ 5. Plaintiff and the Putative Class Members were subject to the same policies and disciplinary procedures and point system. *See* Exs. 1–10, at ¶¶ 6–7. Further, Plaintiff and the Putative Class Members attended similar orientations/training and were all taught the same policies and procedures. *See* Exs. 1–10, at ¶ 6.

Off-the-clock cases, like this one, wherein an employer requires its employees to perform pre-shift prep work off-the-clock and without pay are not unique and granting nationwide certification is the norm whereas, like here, plaintiffs present substantial evidence from multiple locations that the same policies and procedures were uniformly taught and enforced. *See Wesley v. Experian Info. Sols., Inc.,* No. 4:18-CV-00005, 2018 WL 3105763, at *4 (E.D. Tex. June 25, 2018) (certifying a nationwide class of U.S. based IT employees subjected to the same off-the-clock work policy); *Zachary v. Cobalt Mortg., Inc.*, No. 4:16-CV-00754, 2017 WL 1079374, at *4 (E.D. Tex. Mar. 22, 2017) (certifying a nationwide class of processors who alleged the same off-the-clock work policy); *Bunton v. LogistiCare Sols., LLC,* No. A-19-CV-00372-LY-SH, 2020 WL 376661, at *6 (W.D. Tex. Jan. 22, 2020) (certifying a nationwide class of call-center workers who alleged they were not paid for their computer start up times)*; Abner v. Convergys Corp.*, No. 1:18-cv-442, 2019 WL 1573201, at *6 (S.D. Ohio Apr. 11, 2019) (same); *Foster v. Sitel Operating Corporation*, No. 3:19-CV-00148, 2020 WL 1640427, at *1 (M.D. Tenn. Apr. 2, 2020) (same); *Oliver v. Aegis Commc'ns Grp., Inc.,* No. CIV.A. 3:08-CV-828-K, 2008 WL 7483891, at *4 (N.D. Tex. Oct. 30, 2008) (same); *Peery v. Nixon Eng'g, LLC*, No. 618CV00358ADAJCM, 2019 WL 5027126, at *7 (W.D. Tex. Aug. 29, 2019) (certifying a class of workers who were not paid for pre-shift work); *Kilmon v. Saulsbury Industries, Inc.*, No. MO:17-cv-00099-RAJ, 2017 WL 7052328, at *3 (W.D. Tex. Dec. 13, 2017) (certifying a class of all hourly employees where the common scheme or policy affected all hourly employees regardless of job title). Plaintiff Bailey has presented substantial evidence from multiple call center locations that Suddenlink enforced its illegal off-the-clock policy on a company-wide basis. As such this Court should grant conditional certification.

## IV. RELIEF SOUGHT

Plaintiff Bailey seeks the issuance of notice to all Putative Class Members and the disclosure of the names and contact information (including the addresses, e-mail addresses and telephone numbers) of all Hourly Call-Center Employees employed by Suddenlink, anywhere in the United

States, at any time in the past three years from the filing of this Motion through the final disposition of this matter.

### A. PLAINTIFF'S PROPOSED SCHEDULE AND NOTICE/CONSENT FORM

To facilitate the notice process and preserve the rights of those who have not yet opted-in (or learned of this lawsuit), Plaintiff Bailey has attached a proposed Notice and Consent form to be approved by the Court. *See* Ex. 11. This form is based on various Notice and Consent forms previously approved by courts within the Eastern District of Texas, though it has been modified for this particular case. Plaintiff Bailey also seeks an Order from this Court adopting the schedule included in Ex. 11.

### B. COURTS ROUTINELY REQUIRE THE PRODUCTION OF PERSONAL CONTACT INFORMATION FOR THE NOTICE PROCESS

Plaintiff Bailey proposes that the Notice and Consent forms be mailed via First Class Mail, e-mail, and text-message to all Hourly Call-Center Employees who worked for Suddenlink, anywhere in the United States, at any time during the past three years through the present.[7] E-mail notice is a common form of notification in FLSA cases and is routinely granted by courts in the Fifth Circuit and across the United States. *See Page v. Crescent Directional Drilling, L.P.*, No. 5:15-cv-193-RP, 2015 WL 12660425, at *3 (W.D. Tex. Dec. 10, 2015) ("Email is not the wave of the future; [it] is the wave of the last decade and a half[.]"); *Vega*, 2017 WL 4023289, at *4 ("[I]n the world of 2017, email and cell phone numbers are a stable, if not primary, point of contact for the majority of the U.S. population, and thus that using email and texts to notify potential class members is entirely appropriate"). To further quote Magistrate Judge Edison,

> When playing darts, one has a much better chance of hitting a bull's-eye if he uses more than one dart. The same reasoning applies here. Utilizing two means of

---

[7] Plaintiff's counsel will oversee the dissemination of the notice process and pay the up-front charges. All Putative Class Members interested in joining this lawsuit would be required to return their respective consent form to Plaintiff's counsel for filing with this Court within sixty (60) days of the initial mailing of the Notice and Consent forms.

delivery—first class mail and email—is more likely to result in the potential plaintiffs receiving notice of the lawsuit than by a single delivery method.

*Id.* at *7 (recognizing that social networking might soon replace email as the most effective means of reaching potential class members). Sending notice by email therefore effectuates the broad remedial purpose of the FLSA by facilitating notice to members of the putative class. *See Jones*, 149 F. Supp. 3d at 775–76.

Courts in the Fifth Circuit also recognize that "[n]otice via text message is also reasonable and routinely granted by courts for a variety of reasons–including that email and text notice can be a more reliable and effective way to reach potential plaintiffs." *See Wade v. Furmanite Am., Inc.*, No. 3:17-CV-00169, 2018 WL 2088011, at *21 (S.D. Tex. May 4, 2018) (citing *Mahard Egg Farm*, 2016 WL 1704861, at *1); *Peery*, 2019 WL 5027126, at *7. Several courts in the Fifth Circuit have found text-message notice is even more appropriate when their employer frequently communicated with them through their cell phone or where there is high employee turnover. *See Kidwell v. Ruby IV LLC*, No. CV 18-2052, 2019 WL 219850, at *6 (E.D. La. Jan. 16, 2019) (stating, "text-message notification is particularly appropriate when the employer has previously communicated with the employees via text message or where there is high employee turnover."); *Goss v. Tyler Traditions, Inc.*, No. 6:18-CV-423-JDK, 2019 WL 4935290, at *6 (E.D. Tex. July 22, 2019); *Wingo v. Martin Transo., Inc.*, No. 2:18-CV-00141-JRG, 2018 WL 6334312, at *10 (E.D. Tex. Dec. 5, 2018). Plaintiff Bailey has presented substantial evidence that he and the Putative Class Members were frequently texted or called on their cell phones by their Suddenlink managers for work purposes. *See* Exs. 1–10, at ¶ 20. Plaintiff Bailey has also presented evidence that there is a high level of employee turnover and many Putative Class Members have moved since their employment with Suddenlink. *See* Exs. 1–10, t ¶¶ 17, 19. Plaintiff Bailey therefore proposes

sending a text-message link that will redirect Putative Class Members to a webpage containing the full Court-authorized Notice and Consent Form.[8]

## V. CONCLUSION

Plaintiff has more than met his **minimal** burden to show that other similarly situated individuals exist and are interested in asserting their claims. In order to facilitate the purpose of the FLSA's collective action provisions, Plaintiff respectfully requests that the Court grant this Motion and: (1) conditionally certify this action for purposes of notice and discovery; (2) order that judicially-approved notice be sent to all Putative Class Members; (3) approve the form and content of Plaintiff's proposed judicial notice and reminder notice; (4) order Conduent to produce to Plaintiff's counsel the contact information (including the names, address, telephone number and e-mail address) for each Putative Class Member in a usable electronic format; (5) authorize a 60-day notice period for Putative Class Members to join the case; and (6) authorize notice to be sent via First Class Mail, e-mail, and text-message to the Putative Class Members.

[8] Plaintiff requests that the Putative Class Members be given the option to execute their consent forms on-line through an electronic signature service. This service allows Putative Class Members to sign their consent forms electronically by clicking on a link in an encrypted email or text-message designated only for that user, which in turn takes to them to a website where they can review the document they are signing, click a box indicating they have read and understood the consent form and insert information such as their name and date. Users are instantaneously provided with a PDF copy of the form they signed, and a copy of the form is made accessible to Plaintiff's counsel who will in turn file the same with the Court, just as if such document had been received via regular mail.

Dated: April 6, 2020

Respectfully submitted,

**ANDERSON ALEXANDER, PLLC**

By: */s/ Clif Alexnder*
**Clif Alexander**
Texas Bar No. 24064805
clif@a2xlaw.com
**Austin W. Anderson**
Texas Bar No. 24045189
austin@a2xlaw.com
**Lauren E. Braddy**
Texas Bar No. 24071993
lauren@a2xlaw.com
**Alan Clifton Gordon**
Texas Bar No. 00793838
cgordon@a2xlaw.com
**Carter T. Hastings**
Texas Bar No. 24101879
carter@a2xlaw.com
819 N. Upper Broadway
Corpus Christi, Texas 78401
Telephone: (361) 452-1279
Facsimile: (361) 452-1284

**HOMMEL LAW FIRM**

By: */s/ William S. Hommel, Jr.*
**William S. Hommel, Jr.**
State Bar No. 09934250
bhommel@hommelfirm.com
5620 Old Bullard Road, Suite 115
Tyler, Texas 75703
Telephone: 903-596-7100
Facsimile: 469-533-1618

***Attorneys for Plaintiff and the Putative Class Members***

## CERTIFICATE OF CONFERENCE

I hereby certify that Plaintiffs' counsel conferred with Defendant's counsel and they are opposed to the relief requested in this Motion.

/s/ *Clif Alexander*
Clif Alexander

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Eastern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Clif Alexander*
Clif Alexander