# Exhibit 1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **TEDDRICK BAILEY,** | § | **Civil Action No. 2:20-CV-00034** |
| **Individually and on behalf of all others** | § | |
| **similarly situated** | § | |
| | § | **JURY TRIAL DEMANDED** |
| ***Plaintiff,*** | § | |
| | § | |
| **v.** | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. §216(b)** |
| **UNIVERSAL CABLE** | § | |
| **HOLDINGS, INC. d/b/a** | § | |
| **SUDDENLINK COMMUNICATIONS** | § | **CLASS ACTION PURSUANT** |
| | § | **TO FED. R. CIV. P. 23(b)(3)** |
| ***Defendant.*** | § | |

---

**DECLARATION OF ERIC LUSK**

---

I, Eric Lusk, being of sound mind and over the age of 18, make the following declaration:

1. My name is Eric Lusk and the facts contained in this declaration are within my personal knowledge and are true and correct.

2. I was employed by Universal Cable Holdings, Inc. d/b/a Suddenlink Communications ("Suddenlink"), from approximately September of 2017 until September of 2018, at a Suddenlink call center located in Lubbock, Texas.

3. During my employment with Suddenlink, I worked as a Technical Support Representative ("TSR").

4. I worked with several other Suddenlink Hourly Call-Center Employees at the Lubbock center. Hourly Call-Center Employees means all hourly employees who perform their work for Suddenlink by handling customer phone calls. Hourly Call-Center Employees all follow the same policies and procedures, as set by Suddenlink. I know this because the basic policies and procedures for all Suddenlink employees are posted, taught in orientation, and repeated by managers constantly.

5. As a TSR it was my responsibility to handle inbound calls from customers. I would answer general questions, help them troubleshoot their equipment, set up technician visits, review account information, and accept bill payments.

6. I know that my job and my coworkers' jobs were substantially similar, because, regardless of our job title, we all attended the same orientation together and we were all taught the

same Suddenlink policies and procedures for logging into the computer, opening our programs, and getting started for the day. All Hourly Call-Center Employees are taught together to follow the same policies and procedures, as set forth by Suddenlink.

7. As an Hourly Call-Center Employee, Suddenlink required me to arrive early every day. It was Suddenlink's policy that all Hourly Call-Center Employees arrive well in advance of their shift start time so they would have enough time to get their computer systems up and running so they could be Call Ready by shift start. We would have to start up or reboot our computer, log in, read our Suddenlink company emails, and bring up our systems before we could go Call Ready. Going Call Ready just means you are productive, such as taking calls. Suddenlink's management made it clear to us in orientation and throughout our workdays that we were supposed to have all our systems up and running before our shift started so that we could clock in and take calls right at our shift start time. Hourly Call-Center Employees are not allowed to clock in until we are both Call Ready and it is our shift start time. If we had not gone Call Ready at our shift start with all of our programs up and running, our managers could deduct "points" for being tardy. You are tardy if you are not set up and Call Ready right at shift start. If you lost enough points, you could be fired. You had to have your systems up first and be Call Ready at shift start. Hourly Call-Center Employees can also lose points if they clock in before their shift start time. Further, if you clock in early or are not Call Ready at your shift start not only will you receive discipline, but your metrics will be hurt as well. Suddenlink uses several metrics to judge how well an Hourly Call-Center employee is performing, if your metrics are bad you can be fired. Suddenlink's disciplinary system applied to all Hourly Call Center Employees. During my employment at Suddenlink my coworkers and I were written up and lost points on multiple occasions because we were not Call Ready at shift start. One time my manager Don Gracio even deducted points from me because I went Call Ready just two minutes after my shift started, he told me I needed to go Call Ready right at shift start or I am tardy.

8. In order to go Call Ready by shift start, I had to perform a series of functions on the computer that took a long time due to the computer running slowly and crashing often. First, I had to turn on or reboot the computer. Then I had to log in by entering in my username and password. It took anywhere from two (2) to four (4) minutes, on average, for the computer to open to desktop. After getting to the desktop, I then have to open and log into each of my programs. Opening and logging into each program takes approximately three (3) to seven (7) minutes altogether on average. Then I needed to review my emails from Suddenlink to ensure I was up to date with any Suddenlink company policy changes, in case they affected or altered how I was supposed to conduct my phone calls. Only after ensuring that each program was open and running is a Hourly Call-Center Employee able to go Call Ready. You must have all your systems ready before you can go Call Ready or you will not be able to perform your job, all the systems and programs contain vital customer or client information. Likewise, you must read your Suddenlink company policy update emails before you made calls. If a new company update changed your script or how you were supposed to communicate with clients/customers, your managers could deduct points when they review your call, if you did not abide by the new company update. The log in process could take a lot longer though due to system crashes as Suddenlink's computers were very unstable and the programs we used were also very unstable. I experienced system crashes during my log in procedures on average once a week. When the system crashes you have to reboot the computer and completely restart the log in process or you have to go and find a different computer to use.

9. Because Hourly Call-Center Employees have such a heavy workload we would oftentimes have to go to work very early in order to keep up with our call quotas. I do not remember

how many calls we needed to make each day but if we did not make our call quota we could lose points. I would often start work early so that I could keep up with my workload. I personally witnessed several of my coworkers come in as early as I did, also to keep up with their workloads. Even though our managers personally witnessed my co-workers and I arriving early and working, we were not paid for this time. We were also not allowed to submit time alteration requests for this time, as is was considered non-compensable pre-shift time.

10. Suddenlink strictly enforced its policy that prohibits Hourly Call-Center Employees from clocking in until they are both Call Ready and it is their shift start time. If an Hourly Call-Center Employee clocks in and is not immediately Call Ready, a manager will come find them and tell them to clock out until they are ready to be Call Ready. I know this because I was written up multiple times for not being Call Ready at my shift start time. My manager, Don, told me I cannot clock in before my shift start time.

11. Though I arrived early every day to complete tasks necessary to the performance of my job as an Hourly Call-Center Employee, I was not paid for this time. I was not allowed to go Call Ready and clock in until I had completed the computer boot up process, signed in, read my Suddenlink company emails, and had all of my programs running.

12. Suddenlink knew when I arrived at work every day because I was required to swipe my Suddenlink badge card to access the building. Suddenlink also knows when I began the process of preparing my computer because they tracked our keystrokes to make sure that we remained on task during the workday. I also used a log-in ID and password to access my computer.

13. As an Hourly Call-Center Employee, I was scheduled to and did work around forty hours each workweek. However, in addition to my scheduled work time, I often worked an additional one to three hours each week performing tasks benefitting Suddenlink that were a necessary and indispensable part of my job duties, such as logging into and starting up my computer, and getting ready to be productive.

14. As a TSR, I was paid by the hour. My hourly rate was approximately $10.00. My shifts varied during my employment with Suddenlink.

15. Though I regularly worked an additional one to three hours each week in addition to my scheduled hours, I was not paid for the additional time where I worked off-the-clock on behalf of Suddenlink as an Hourly Call-Center Employee.

16. Suddenlink's corporate policies and procedures applied to all Hourly Call-Center Employees at the Lubbock center and at the other Suddenlink centers across the country. I know this because Suddenlink regularly made it clear that its policies were made at the corporate level and that strict compliance with its policies was critical.

17. Based on my experiences and conversations with other Hourly Call-Center Employees and my personal observations, I know that other Hourly Call-Center Employees arrived early and were required to work off-the-clock just as I did. They were subject to the same corporate policies as I was that required them to log in to their computers before their shifts had started. Because Suddenlink was such a difficult place to work it had a very high turnover rate.

18. Based on my conversations with other Hourly Call-Center Employees, I believe that they would be interested to learn that they may recover unpaid wages and overtime from Suddenlink and would be interested in joining the lawsuit.

19. Based on my conversations with other Suddenlink Hourly Call-Center Employees, I know that several of them have moved as well since their employment with Suddenlink.

20. As a Suddenlink employee, my supervisors knew my personal cellphone contact information and would contact me via calls, texts, and emails regarding work. Specifically, my managers would call or text me to ask me questions about calls I had with customers, such as why I may have credited a customer's account or why I made changes to a customer's account. I know from speaking with my coworkers that they too would be contacted by their Suddenlink managers over their cell phones.

21. I declare under penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

Executed on: Apr 3, 2020

Eric Lusk (Apr 3, 2020)

Eric Lusk